UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROBERT JAMISON,

            Plaintiff,

                                            Case Number 06-15220-BC
v.                                         Honorable Thomas L. Ludington

SAGINAW SCHOOL DISTRICT and
SAGINAW BOARD OF EDUCATION,

            Defendants.
_____ /

## **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On November 22, 2006, Plaintiff Robert Jamison ("Plaintiff") filed a complaint against Defendants Saginaw School District and Saginaw Board of Education ("Defendants"), alleging employment discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §§ 37.2101 *et seq*. On April 15, 2008, Defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56.

The Court heard oral arguments on June 18, 2008. The parties agree that Plaintiff has not provided direct evidence of age discrimination. Defendants also contend that Plaintiff is unable to establish a prima facie age discrimination claim with circumstantial evidence. While a close question, the Court concludes that Plaintiff has demonstrated a prima facie case of age discrimination through circumstantial evidence. For the reasons stated below, the Court will **DENY** Defendants' motion for summary judgment.

I

Plaintiff, born in 1935, worked in various administrative positions for Defendants from 1971 until August 3, 2006. Plaintiff served as the director of student support services ("SSS Director") from 1982 to 2003. Defendants acknowledge that Plaintiff was a competent employee throughout his tenure without any noteworthy disciplinary or performance-related issues. *See, e.g.* dkt. # 31-6. The events relevant to the instant dispute began in 2003 when Plaintiff was reassigned from his position as SSS Director to another administrative position.

In 2003, Defendants' superintendent, Dr. Gerald Dawkins ("Superintendent"), began restructuring the school district's organization due to financial concerns. Defendants maintain that full-time student enrollment has decreased by more than twenty percent since 2000, with a majority of the decrease occurring between 2005 and 2007. As a result, Defendants suffered from a reduction in funding. Certain administrative positions were consolidated, others eliminated, and some positions created.

Defendants reassigned Plaintiff for the 2003 to 2004 scholastic year to become the Director of Social Work. Defendants also reassigned various other administrative level employees. John Paine ("Paine"), born in 1951, became SSS Director after it was vacated by Plaintiff's reassignment. Paine had previously served as the Principal of Arthur Hill High School. Defendants maintain that the reorganization shifted additional responsibilities on to the SSS Director, and the Superintendent believed Paine was better qualified for the realigned responsibilities. The Superintendent maintained that Paine's experience as a principal was a benefit for oversight of the athletic program–an added duty of the SSS Director. Paine remained in that position until Defendants bought out Paine's employment contract in January of 2008.

According to Plaintiff's deposition testimony, Defendants suggested that he should consider retirement at the completion of the 2003 to 2004 term. Plaintiff testified that the Executive Director inquired in February of 2004 whether Plaintiff anticipated his date of retirement. Dkt. # 22-5. Plaintiff indicated that he did not have any intention of doing so. *Id.* Plaintiff believes that the Executive Director made the inquiry at the Superintendent's direction. *Id.* Defendants do not acknowledge nor deny that the conversation occurred. *See* dkt. # 22 at 23-24.

For the 2004 to 2005 scholastic year, Defendants reassigned Plaintiff to become the director of alternative and adult education programs. Defendants did not fill the vacated Director of Social Work position. Rather, Defendants' executive director of special education and student services, Marilyn Norwood ("Executive Director"), incorporated the Director of Social Work's duties into her job responsibilities.

Prior to the 2004 to 2005 school year, Defendants employed Plaintiff, and all other similarly situated administrators, by way of a series of two year administrative contracts. The labor agreement between the Defendants and the Saginaw School Administrators Group provided that Defendants would issue administrative contracts on a two year basis for employees that began working for Defendants prior to 1993. Dkt. # 31-4 at Art. IV(A)(1). In 2004, Plaintiff was the only administrator, whose tenure pre-dated 1993, that was offered a one-year contract. The Superintendent testified that he gave Plaintiff a single year contract because the available options were a one year contract or termination of employment. Dkt. # 31-7 at 55-57. Defendants acknowledged that every administrative employee, whose employment pre-dated 1993, received a two year contract pursuant to the labor agreement, except for Plaintiff.

On May 13, 2005, Defendants issued a letter to Plaintiff terminating his employment, effective at the expiration of the 2004 to 2005 employment contract. Dkt. # 31-20. Defendants stated that they were eliminating certain positions in consideration of the district's "overall needs." *Id.* The letter was authored by Defendants' assistant superintendent, Dr. Thomas Barris ("Assistant Superintendent").

On May 19 and 31, 2005, Plaintiff appealed the decision, contending the discharge violated his due process rights, civil rights, and seniority rights under the labor agreement. Dkt. # 31-21, 31-22, 31-25. On June 14, 2005, the Assistant Superintendent sent a response indicating that the decision was final and that Plaintiff's rights were not violated. Dkt. # 31-23. Plaintiff sent additional letters objecting to his termination to the Superintendent, the Assistant Superintendent, and Defendants' board president, Willie Thompson ("Board President"). Dkt. # 31-24, 31-25, 31-26.

On July 7, 2005, the Assistant Superintendent rescinded Plaintiff's discharge, reassigning Plaintiff to serve as the assistant principal at Weber Middle School ("Weber") for the 2005 to 2006 school year, but freezing his salary at his current rate. Dkt. # 31-27. On July 8, 2005, Plaintiff filed a complaint with the Michigan Department of Civil Rights and Equal Employment Opportunity Commission alleging age discrimination. Dkt. # 31-28. On July 14, 2005, Plaintiff's counsel sent a letter to the Board President, contending that the assistant principal position was inconsistent with Plaintiff's previous administrative positions. Dkt. # 31-29. Plaintiff's counsel sent a similar letter to the Assistant Superintendent requesting a position for Plaintiff consistent with his experience and seniority. Dkt. # 31-30. On July 29, 2005, Plaintiff's counsel drafted another letter suggesting Plaintiff would retire if Defendants paid an amount equivalent to two years salary. *Id.* Defendants

did not accept the offer and directed Plaintiff to report to Weber for the 2005 to 2006 scholastic term.

Plaintiff never reported for the position. Rather, Plaintiff took medical leave for the entire scholastic year beginning on August 1, 2005. Plaintiff suffered from weight loss, insomnia, high blood pressure, and diminished sexual drive. On August 22, 2005, the Assistant Superintendent requested Plaintiff's physician certify Plaintiff's medical conditions. Dkt. # 22-19. On July 10, 2006, Defendants required Plaintiff to participate in a mandatory psychiatric evaluation. Dkt. # 22-10. The medical examiner concluded that Plaintiff was able to return to work.

While Plaintiff was on medical leave, Defendants laid off Plaintiff for financial reasons pursuant to the labor agreement. Dkt. # 22-21. The March 30, 2006 letter stated, "This is to advise you that . . . [Defendants] voted to lay [Plaintiff] off from [his] position with [Defendants] as a result of [Defendants'] current economic situation." *Id.* Defendants maintain that all administrators, except for the Superintendent, were laid off at that time. The labor agreement provided that Defendants could lay off its administrators due to "economic conditions, a contracting student population, or other administrative reasons." Dkt. # 31-4 at 14 (Labor Agreement at Art. XI, § (B)(6)).

On July 17, 2006, the Assistant Superintendent issued a recall notice nullifying the lay-off and assigning Plaintiff to Weber as the assistant principal. Dkt. # 22-22. The recall notice provided:

> This is to certify that [Plaintiff] will be rehired for the 2006-07 school year. It has been determined that the services of [Plaintiff] will not be discontinued as was previously decided upon at the March 30, 2006, [sic] Board of Education meeting. This notice formally nullifies the layoff notice given to [Plaintiff] following the March 30, 2006 Board meeting.
>
> Your assignment for the 2006-07 school year will be <u>Assistant Principal</u>, Building assignment to be determined.

*Id.* at 1 (emphasis in original). The bottom half of the recall notice contained a section requesting Plaintiff to verify receipt of the recall notice and indicate whether he accepted or rejected the recall to employment. *Id.* Along with the recall notice, the Assistant Superintendent included the following in a letter:

> We are in receipt of a doctor's statement, releasing you to return to work.
>
> You are hereby notified that you are being recalled to the position of Assistant Principal. Please call my office immediately [], to make an appointment to discuss your assignment and work calender.
>
> Please sign a copy of the enclosed recall notice, and return to me in the self addressed envelope provided.

*Id.* at 2. Defendants maintain that Plaintiff did not return a signed copy of the recall notice, nor did Plaintiff call the Assistant Superintendent.

On July 26, 2006, the Assistant Superintendent requested Plaintiff to meet with him to receive his employment assignment for the 2006 to 2007 scholastic year. Dkt. # 22-23. The letter stated:

> On July 17, 2006, you were notified that you had been released to return to work.
>
> You were directed to call my office immediately to discuss your assignment. To date, I have not heard from you.
>
> Therefore, you are directed to report to my office at 8:00 a.m. on Monday, July 31, 2006, to receive your assignment and begin your work year.

*Id.* The Assistant Superintendent testified that Plaintiff reported to his office on July 31, 2006. He instructed Plaintiff to immediately begin his assignment at Weber and to remove his items from his previous workspace at the administrative office. Dkt. # 22-17 at 3-4.

Plaintiff disputes that the Assistant Superintendent told him to report to Weber that day. Rather, Plaintiff maintains that the Assistant Superintendent instructed Plaintiff that he would notify

Plaintiff of the date to report to Weber after "finalizing" arrangements with the Superintendent. Dkt. # 31-33 at 19-21. Consequently, Plaintiff did not report to Weber to begin work. Plaintiff's counsel acknowledged, however, that Plaintiff did not clear out his office at the administrative office, contrary to the Assistant Superintendent's directive.

On August 3, 2006, the Assistant Superintendent notified Plaintiff that Defendants were terminating his employment for failing to begin employment at Weber. Dkt. # 22-24. The letter provided:

> On July 18, 2006, you received notice that you had been released to return to work and were being recalled to the position of Assistant Principal.
>
> You were subsequently notified to commence work on July 31, 2006. Since you failed to commence work as directed and/or accept our offer of re-employment, pursuant to the provisions of the [labor agreement], your employment has terminated and you have no further rights of reinstatement.

*Id.* Defendants relied on the following provision of the labor agreement:

> The parties agree an employee's eligibility for recall shall immediately terminate and all length-of-service rights shall be severed if he/she:
>
> * * *
>
> c.) Fails to report and/or be available to commence working as per the conditions of the Board's recall notice, i.e. if an administrator/supervisor fails to accept an offer of re-employment in [an administrative] position for which he/she is judged qualified, unless temporarily ill, the administrator shall have no further rights of reinstatement.

Dkt. # 22-8 at 18 (Labor Agreement at Art. XI, § (C)(4)(c)). Plaintiff disputed the basis of his discharge, and his counsel provided the following response on August 10, 2006:

> I am now in receipt of your termination letter dated August 3, 2006. We find it ironic that [Defendants have] allegedly fired [Plaintiff] for failing to commence work when you directly advised him not to report until [the Assistant Superintendent] had talked with [the Superintendent]. Therefore[,] under any circumstances he would have no reason to report.

> [Plaintiff] is, as he has been at all times relevant hereto, ready, willing and able to report to an appropriate and comparable position of director inside or out of central office.

Dkt. # 31-36 at 2. The Assistant Superintendent responded as follows:

> First, [Defendants] did not fire [Plaintiff]. [Plaintiff's] employment with [Defendants] terminated . . . when [Plaintiff] chose not to commence work in his recalled position. [The labor agreement] provides that an employee who fails to commence work has no further rights of reinstatement and is immediately terminated.
>
> Second, your statement that [Plaintiff] was directed not to report until [the Assistant Superintendent] talked with [the Superintendent] is absolutely untrue. [Plaintiff] was directed where and when to commence work. [Plaintiff] simply chose not to commence work.

Dkt. # 31-37 at 2.

In support of his belief that he was not instructed to immediately report to Weber, Plaintiff maintains that assistant principals customarily report for duty no earlier than the middle of August. Dkt. # 31-33 at 20-21. Plaintiff and the Assistant Superintendent each acknowledged that, as of July 31, 2006, an employment contract did not exist between the parties. *Id.* at 22, 33. Additionally, the Assistant Superintendent acknowledged that it is not Defendants' policy to terminate an administrator for missing one or two days of work. *Id.* at 34.

The parties were unable to resolve the dispute, and Plaintiff brought this suit.

II

Under Federal Rule of Civil Procedure 56, a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

III

The ADEA, at 29 U.S.C. § 623(a)(1), provides, "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age . . . ." Age discrimination cases follow the familiar framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as employed in Title VII cases. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003). Thus, a plaintiff may rely on direct or circumstantial evidence to demonstrate an ADEA claim. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000).

If a plaintiff presents direct evidence of discrimination, then a court need not employ the *McDonnell Douglas* framework, because the direct evidence eliminates the need for that inferential demonstration of discrimination. *See Blalock v. Metals Trades, Inc*., 775 F.2d 703, 707 (6th Cir. 1985) (citations omitted). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional

discrimination." *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 153 (2000); *see also Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (6th Cir. 2006). Failure to prove an essential element of a *prima facie* case need not prove fatal, if a plaintiff can provide sufficient evidence of intentional discrimination. *See Noble v. Brinker International, Inc*., 391 F.3d 715, 721 (6th Cir. 2004).

In a direct evidence case, "[s]tatements by non-decision makers, or statements by decision makers unrelated to the decisional process itself [can not] suffice to satisfy the plaintiff's burden of demonstrating animus." *Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 550 (6th Cir. 2004) (citations and internal quotations omitted). In *Rowan*, the plaintiffs did not allege that the supervisors who made negative remarks about their age had any involvement in the defendant's decision to discharge them, so the court affirmed the decision not to permit the case to proceed based on direct evidence. *Id*.

Without direct evidence, the burden-shifting analysis of *McDonnell Douglas* applies. *Johnson*, 215 F.3d at 573. A plaintiff establishes an age discrimination claim with sufficient circumstantial evidence by creating a reasonable inference that age was a determining factor in the employment decision. 1 HON. CHARLES R. RICKEY, MANUAL ON EMPLOYMENT DISCRIMINATION LAW AND CIVIL RIGHTS ACTIONS IN THE FEDERAL COURTS § 3:100 (2d ed. 2008) (*citing O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308 (1996)). To make out a prima facie case for age discrimination, a plaintiff must demonstrate the following: (1) that he is a member of a protected class (i.e. over the age of forty); (2) that he is qualified to perform the job; (3) that he was subject to an adverse employment action; and (4) that the employer replaced him with a younger individual. *Tuttle v. Metropolitan Government of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). "In age

discrimination cases, the protected class includes all workers at least 40 years old and the fourth element is modified to require replacement not by a person outside the protected class, but merely replacement by a significantly younger person." *Grosjean*, 349 F.3d at 335 (citations omitted). A difference in age greater than six years is considered substantial and is sufficient to satisfy the fourth element. *Id.* at 340. Additionally, "[t]he fourth element may be satisfied by showing that similarly situated non-protected employees were treated more favorably." *Tuttle*, 474 F.3d at 317 (*quoting Coomer v. Bethesda Hosp. Inc.*, 370 F.3d 499, 511 (6th Cir. 2004) (quotation omitted).

Once a plaintiff establishes a prima facie case, then the defendant may respond by offering a legitimate, non-discriminatory reason for its employment action. *Grosjean*, 349 F.3d at 335 (citation omitted). "[A]fter the defendant has met this burden, the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Id*. (citation and quotations omitted). Pretext may be established by demonstrating one of the following: "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the plaintiff's] discharge, or (3) that they were insufficient to motivate discharge." *Tuttle*, 474 F.3d at 319 (citation omitted).

As an initial matter, Defendants assert that Plaintiff has not presented direct evidence establishing age discrimination. Plaintiff agrees that his case is not a direct evidence case. Plaintiff relies on circumstantial evidence.

It is without dispute that Plaintiff was in the protected class (i.e. in excess of forty years of age), qualified for an administrative position (demonstrated by satisfactory prior service), and suffered adverse employment action (i.e. the termination of his employment on August 3, 2006). Plaintiff contends, and the Court agrees, that multiple decisions by Defendants, commencing with

his removal from his job as SSS Director and culminating in his dismissal, provide sufficient evidence of an adverse employment action, particularly when considered in their totality.

The final element of a prima facie case addresses whether a similarly situated non-protected employee was treated more favorably. Here, Plaintiff focuses on the favorable treatment of Paine, who was approximately fourteen years younger than Plaintiff. It is undisputed that Defendants reassigned Plaintiff from the position of SSS Director to Director of Social Work for the 2003 to 2004 scholastic year. At that same time, Defendants selected Paine to become the SSS Director, a position that Plaintiff served in for twenty-one years. The Superintendent believed Paine was a better fit because the position of SSS Director incorporated additional duties in 2003. The next year, Defendants entered into a two year contract with all of their administrators (including Paine), except for Plaintiff. Plaintiff only received a one year contract, despite the fact the labor agreement mandated that he receive a two year contract because of the length of his previous service. Defendants have not articulated a clear reason why Plaintiff was the only administrator to receive a one year contract. Moreover, Defendants eliminated the Director of Social Work position and terminated his employment at the end of the 2004 to 2005 scholastic term. Paine retained his position as SSS Director. Finally, Defendants rescinded the discharge, but froze Plaintiff's pay and moved him out of the central office to become an assistant principal. Throughout this time, Paine continued to serve as the SSS Director. There is no indication that Paine's salary was frozen. Plaintiff has demonstrated that Defendants treated Paine more favorably than himself.

Next, Defendants maintain that Plaintiff's absence from Weber on July 31 through August 3, 2006 was a legitimate, non-discriminatory reason for the termination of Plaintiff's employment. Defendants' argument relies on the suggestion that Plaintiff violated the recall provision of the labor

agreement. The record demonstrates that Defendants issued the lay-off notice on March 30, 2006 and recalled Plaintiff on July 17, 2006. Plaintiff did not begin his employment at Weber within fifteen days of the recall notice, as Defendants contend he was instructed to do. Defendants also maintain that Plaintiff repeatedly engaged in willful, non-responsive conduct after the lay-off. That is, Defendants assert that Plaintiff did not respond to the July 17, 2006 recall notice, and he only appeared at work upon receiving a written directive from the Assistant Superintendent. Thus, Defendants argue, they have articulated a legitimate reason for terminating Plaintiff's employment.

Consequently, the burden shifts to Plaintiff to produce sufficient evidence from which the jury might reasonably reject Defendants' explanation because the proffered reasons were not Defendants' true motivation. The record demonstrates that Plaintiff has met his burden. He has identified conduct beginning in 2003 and continuing until Plaintiff's discharge, on August 3, 2006, that could be reasonably understood to identify Plaintiff's age as a motivating factor. First, Plaintiff testified that Defendants' Executive Director raised the issue of Plaintiff's retirement in February of 2004. Plaintiff maintains that he informed the Executive Director that he intended to continue his employment. Additionally, Plaintiff was the only similarly situated administrator to receive a one year employment contract. At the conclusion of the 2004 to 2005 school year, Defendants attempted to terminate his employment, then froze his pay, and reassigned him to an administrative position outside of the administrative office.

After taking a year of sick leave, Plaintiff complied with Defendants' request to submit to a psychological examination and appeared at a meeting with the Assistant Superintendent at Defendants' direction. Then, four days after appearing, Defendants terminated him without any effort to ascertain his location. Defendants relied on the labor agreement's provision that authorizes

them to terminate anyone's employment that does not "report" within fifteen days of recall, but Plaintiff responds that he was simply following the instructions received. While Defendants dispute Plaintiff's version of his instructions, Defendants' version is sufficient to demonstrate a legitimate question about whether Plaintiff's discharge for failure to report to Weber may be pretext. Therefore, Plaintiff has met his burden under *McDonnell Douglas* and summary judgment will be denied.

Additionally, the parties agree that analysis of Plaintiff's ELCRA claim mirrors that of the ADEA claim. *See Lytle v. Malady*, 579 N.W.2d 906, 916 (Mich. 1998). The result is the same under state as well as federal law.

IV

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [Dkt. # 22] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 27, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 27, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS